**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

JOELLEN DONNER,

        *Plaintiff*,                                           **16 CV 9581**

        *v*.

                                                               **COMPLAINT**

GFI CAPITAL RESOURCES GROUP, INC., and
VINCENT M. VIENI, individually,

        *Defendants*.

------------------------------------------------------------------------x

Plaintiff JoEllen Donner, by her counsel, The Harman Firm, LLP, alleges for her Complaint against Defendant GFI Capital Resources Group, Inc., and Defendant Vincent M. Vieni as follows:

## PRELIMINARY STATEMENT

1. Plaintiff JoEllen Donner ("Plaintiff" or "Ms. Donner") was employed as a Client Consultant by Defendant GFI Capital Resources Group, Inc. ("Corporate Defendant" or "GFI"), a New York City-based real estate developer. Defendant Vincent M. Vieni ("Individual Defendant" or "Mr. Vieni") (hereinafter, Individual Defendant and Corporate Defendant are collectively referred to as "Defendants") is GFI's Senior Vice President for Sales and Strategy and was Plaintiff's direct supervisor throughout her employment with GFI.

2. Plaintiff seeks damages and costs against Corporate Defendant for discriminating against her based on her gender, in violation of the Fair Labor Standards Act ("FLSA") as amended by the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), and the equal pay provision of the New York State Labor Law ("NYLL"), N.Y. Lab. Law § 194.

3. Plaintiff also seeks damages and costs against Defendants for discriminating against her based on her gender by subjecting her to a hostile work environment and ultimately

1

terminating her employment, in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq*.

4.  Plaintiff also seeks damages and costs against Defendants for retaliating against her for her complaints of gender discrimination by, among other things, subjecting her to further discrimination and harassment and ultimately terminating her employment, in violation of the NYCHRL.

5.  Plaintiff also seeks damages and costs against Individual Defendant for tortious interference with business relations and negligent misrepresentation, in violation of the New York state common law.

## JURISDICTION AND VENUE

6.  Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

    a.  Plaintiff is a citizen of the State of New Jersey, as she is domiciled in the State of New Jersey.

    b.  Upon information and belief, Corporate Defendant is a citizen of the State of New York, as it is a corporation organized under the laws of the State of New York with its principal place of business located in the State of New York.

    c.  Individual Defendant is a citizen of the State of New York as, upon information and belief, he is domiciled in the State of New York.

7.  Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

**PARTIES**

8. Ms. Donner, at all times relevant hereto, was and is a resident of Monmouth County in the State of New Jersey.

9. Upon information and belief, at all times relevant hereto, GFI was and is a corporation organized under the laws of the State of New York with its headquarters located at 50 Broadway, 4th Floor, New York, New York 10004 in New York County.

10. Upon information and belief, at all times relevant hereto, Mr. Vieni was employed by GFI as its Senior Vice President for Sales and Strategy.

**STATEMENT OF FACTS**

11. On or about February 1, 2016, GFI hired Ms. Donner as a Client Consultant working in GFI's Insurance Sales department.

12. Ms. Donner has eight (8) years' experience in the employment benefits business.

13. As a Client Consultant, Ms. Donner was responsible for growing GFI's Employee Benefits Division by cold-calling potential clients and developing relationships with potential referrers.

14. Upon Ms. Donner's hire, Mr. Vieni told her that GFI would give her twelve (12) months to demonstrate that she could sell effectively and increase revenue for GFI.

15. GFI subjected Ms. Donner to sexual harassment and gender discrimination throughout her employment.

16. Male GFI employees constantly made sexual comments and derogatory remarks about women. They discussed women in demeaning ways, passed images of women they found sexually attractive around in the office, and openly had graphic and lewd conversations in the workplace about sex and women's bodies.

3

17. For example, GFI's male employees openly conversed in detail at work about picking up women, discussed their "hookups" from the weekend, and exchanged tips on which bars had the most "available" and the "sexiest" girls.

18. Anthony Genovese, another Client Consultant, spent most of his work days flirting with young women in the office and would regularly show pictures of girls that he had "picked up" to other GFI employees.

19. On one occasion, Mr. Genovese left the office, saying that he was going to meet someone at a coffee shop.

20. When a male GFI employee asked whom Mr. Genovese was meeting, Mr. Genovese responded, "A business prospect with a hot body, so definitely worth my time."

21. Disgusted and offended, Ms. Donner started to work primarily out of the breakout room to avoid being forced to listen to these constant conversations.

22. During a lunch meeting between a visiting company representative and several male GFI employees, the conversation turned to the Olympics, and Mr. Vieni mentioned that he had traveled to Peru.

23. Mr. Vieni stated that Peru was "a great place to visit" because "all of the women walk around without a shirt on."

24. Mr. Genovese laughed and responded that he would make it a point to visit Peru.

25. Ms. Donner and the company representative were both uncomfortable and silent.

26. Ms. Donner was the only woman at this lunch.

27. Early in Ms. Donner's employment, a LinkedIn representative visited GFI to sell LinkedIn's upgraded networking services.

28. At the end of the pitch, the representative said that LinkedIn offered one-on-one training concerning the service's new features.

29. Mr. Genovese immediately announced that he wanted to know the name of the representative whose picture was onscreen during the presentation.

30. Mr. Genovese said that the pictured representative was "hot" and that, if LinkedIn made her GFI's personal representative, he would make sure that GFI bought the service.

31. The rest of GFI's employees laughed and continued to make remarks about the woman's sex appeal.

32. These sexist comments deeply upset Ms. Donner and made her extremely uncomfortable.

33. Again, Ms. Donner was the only woman in this meeting.

34. After the meeting, Ms. Donner complained to Mr. Vieni that the comments made by Mr. Genovese and the rest of the men in the meeting were completely out of line, unprofessional, and offensive.

35. Mr. Vieni's only response was to laugh at Ms. Donner and ignore her complaint.

36. Later, Ms. Donner suggested that GFI purchase LinkedIn's upgraded service, as she believed that it would help generate new business; she reiterated that, during the LinkedIn meeting, Mr. Genovese had been more concerned with the female representative's physical appearance than whether the program would increase business.

37. Mr. Vieni again laughed in response to Ms. Donner's concerns about GFI's discriminatory work environment and justified the discriminatory behavior, telling Ms. Donner, "Oh, guys are like this. It's normal."

38. On another occasion, when Ms. Donner set up a meeting with a new client in Brooklyn, Mr. Vieni mocked Ms. Donner in front of male GFI employees, calling her a "princess" and stating that she would be incapable of riding the subway to the meeting, as it would be "too much" for her.

39. GFI distributed job duties based on gender.

40. For example, Mr. Genovese refused to make cold calls to clients, even though cold-calling potential clients was crucial to generating sales.

41. When Ms. Donner told Mr. Vieni that Mr. Genovese was not attempting to generate new revenue, Mr. Vieni told her, "Men can't make those types of calls. Men are just different than women; women can talk to people easier because women are more domesticated."

42. Mr. Vieni also told Ms. Donner to keep track of leads by hand, which he did not expect from Mr. Genovese.

43. Mr. Vieni justified this gender-based distribution of job responsibilities with sexist stereotypes, telling Ms. Donner, "You're a woman, so taking notes and keeping track of things isn't hard for you. It's natural for women to organize things. You're used to it from being home raising kids."

44. Mr. Vieni constantly told Ms. Donner that men just could not be expected to do some tasks, like cold-calling and tracking sales, but that these skills "came naturally" to women.

45. In and around July 2016, GFI instructed Ms. Donner not to use the breakout room because "there were other people that wanted to use it" and "she could not be there in case someone else wanted it."

46. The very next day, Mr. Genovese was in the breakout room to eat lunch and socialize with other male GFI employees.

47. Mr. Genovese continued to use the room for the rest of the week for the same non-work purposes.

48. In August 2016, Benefit Mall offered an important meeting involving carrier updates.

49. Ms. Donner asked GFI if she could go to the meeting, as the topic was highly relevant to her job.

50. However, GFI discouraged Ms. Donner from attending the meeting, telling Ms. Donner that the information provided would be of no use to her, although Mr. Genovese and another recently hired male account representative would be attending the meeting.

51. Eventually, after Ms. Donner's repeated requests, GFI reluctantly allowed Ms. Donner to attend the meeting, telling her to "do whatever you want."

52. During the meeting, an account manager directly asked Mr. Genovese about the pay scale of GFI salespersons.

53. Mr. Genovese answered, "It depends.  [Mr. Vieni] determines that on an individual basis."

54. Mr. Vieni later told Ms. Donner that Mr. Genovese made more than she did.

55. Ms. Donner's and Mr. Genovese's jobs required equal skill, effort, and responsibility and were performed under similar working conditions.

56. Both Ms. Donner and Mr. Genovese were Client Consultants who worked from GFI's Manhattan office.

57. Each afternoon, all of the Client Consultants, except for Ms. Donner, went out for lunch and beers together.

58. Mr. Vieni did not invite Ms. Donner to these lunch meetings; the only employees invited were men.

59. In fact, it was not until the last week of Ms. Donner's employment that another employee invited Ms. Donner, saying, "We are going to lunch and feel it would be discriminatory to continue not inviting you."

60. In and around September 2016, Ms. Donner and Mr. Vieni met to discuss new leads and appointments.

61. In this meeting, Mr. Vieni mentioned that he was under pressure from his supervisors to increase revenue.

62. Ms. Donner asked if he had told his supervisors everything she was working on. Mr. Vieni said that he had and that Ms. Donner was not only doing a great job, but was the only employee who was consistently making sales appointments, preparing to close a large account, or bringing in new potential GFI clients.

63. However, on September 21, 2016, GFI abruptly terminated Ms. Donner's employment.

64. In explanation, Mr. Vieni told Ms. Donner only, "Management wasn't happy with the revenue coming in."

65. Ms. Donner, shocked and confused, reminded Mr. Vieni that she had a large account coming in by the end of the following week, as they had discussed in their meeting earlier that month.

66. However, Mr. Vieni refused to elaborate further and merely reiterated that GFI was terminating Ms. Donner's employment, telling her only that the decision had already been made.

67. At no point during Ms. Donner's employment did GFI identify any deficiency in her work.

68. Moreover, at the time of her termination, Ms. Donner was consistently bringing in more revenue than Mr. Genovese, who, as noted above, had an identical job title.

69. Further, after Ms. Donner's termination, GFI hired a man to fill her job position.

70. In reality, GFI terminated Ms. Donner's employment because of her gender and in a deliberate effort by Mr. Vieni to sabotage her career with GFI.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Gender Discrimination in Violation of the FLSA as Amended by the EPA
### (Against Corporate Defendant)

71. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72. At all times relevant to this action, Plaintiff was employed by Corporate Defendant within the meaning of the FLSA.

73. The FLSA, as amended by the EPA, prohibits an employer from discriminating against an employee on the basis of sex in the payment of wages for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

74. Corporate Defendant paid Plaintiff less than male employees who performed equal work which required equal skill, effort, and responsibility and which was performed under similar working conditions.

75. Corporate Defendant paid Plaintiff less than her male counterparts solely because of her sex; there was no legitimate reason for Defendant's pay disparity.

76. As such, Corporate Defendant has violated the EPA.

77. Due to Corporate Defendant's EPA violations, Plaintiff is entitled to recover from Corporate Defendant her unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

## SECOND CAUSE OF ACTION
### Gender Discrimination in Violation of the NYLL
### (Against Corporate Defendant)

78. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 77 with the same force as though separately alleged herein.

79. At all times relevant to this action, Plaintiff was employed by Corporate Defendant within the meaning of the NYLL.

80. § 194 of the NYLL prohibits an employer from discriminating against an employee on the basis of sex in the payment of wages for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

81. Payment must be made pursuant to a differential based on a seniority system, a merit system, system which measures earnings by quantity or quality of production, or another bona fide factor other than sex.  Such factor may not be based upon a sex-based differential and must be job-related.

82. Corporate Defendant paid Plaintiff less than male employees who performed equal work which required equal skill, effort, and responsibility and which was performed under similar working conditions.

83. Corporate Defendant paid Plaintiff less than her male counterparts solely because of her sex; there was no bona fide factor which justified Defendant's pay disparity.

84. As such, Corporate Defendant has violated the equal pay provision of the NYLL.

85. Due to Corporate Defendant's NYLL violations, Plaintiff is entitled to recover from Corporate Defendant her unpaid compensation, liquidated damages, interest and reasonable attorneys' fees, costs, and interest related to the action.

### THIRD CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL
### (Against All Defendants)

86. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 85 with the same force as though separately alleged herein.

87. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, or privileges of employment on the basis of gender.

88. Defendants discriminated against Plaintiff by terminating her employment because she is a woman.

89. As a direct and proximate consequence of Defendants' gender discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

90. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### FOURTH CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL
### (Against All Defendants)

91. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 90 with the same force as though separately alleged herein.

92. The NYCHRL prohibits an employer from discriminating against an employee in compensation or in terms, conditions, or privileges of employment on the basis of gender.

93. Defendants subjected Plaintiff to a hostile work environment, including sexual harassment and offensive sexist comments, because she is a woman.

94. As a direct and proximate consequence of Defendants' gender discrimination and harassment, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

95. Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

### FIFTH CAUSE OF ACTION
### Retaliation in Violation of the NYCHRL
### (Against All Defendants)

96. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 95 with the same force as though separately alleged herein.

97. The NYCHRL prohibits an employer from retaliating or discriminating against an employee for opposing or complaining of any practices made illegal under the NYCHRL.

98. Plaintiff properly complained to Defendants about gender discrimination and sexual harassment.

99. Defendants retaliated against Plaintiff by subjecting her to further discrimination and harassment and, ultimately, terminating her employment.

100. As a direct and proximate consequence of Defendants' retaliation, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

101. Defendants' discriminatory treatment of Plaintiff was willful and in reckless disregard of Plaintiff's protected rights. Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Business Relations in Violation of the New York State Common Law
**(Against Individual Defendant)**

102. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 101 with the same force as though separately alleged herein.

103. At all times relevant hereto, Individual Defendant was employed by Corporate Defendant.

104. Plaintiff and Corporate Defendant had a business relation: Corporate Defendant employed Plaintiff.

105. Defendants had full knowledge of that employment relation.

106. Outside of the scope of his authority, Individual Defendant openly sabotaged Plaintiff's career by subjecting her to a hostile work environment based on gender and ultimately causing Plaintiff's employment to be terminated.

107. As a direct and proximate consequence of Individual Defendant's tortious interference with Plaintiff's business relation with Corporate Defendant, Plaintiff's employment was terminated.

## SEVENTH CAUSE OF ACTION
### Negligent Misrepresentation in Violation of the New York State Common Law
**(Against Individual Defendant)**

108. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 107 with the same force as though separately alleged herein.

109. As Corporate Defendant's employee and Plaintiff's supervisor at Corporate Defendant, Individual Defendant had a special position of confidence and trust with Plaintiff with respect to the terms and conditions of her potential employment with Corporate Defendant.

110. Individual Defendant made a representation of material fact to Plaintiff upon offering her a job position at GFI, namely, that GFI would give Plaintiff twelve (12) months to demonstrate that she could sell effectively and increase revenue for GFI before she could be terminated for reasons concerning revenue generation.

111. However, Defendants terminated Plaintiff without cause less than twelve (12) months after her hiring due to issues with revenue generation.

112. Individual Defendant's representation to Plaintiff was false at the time it was made.

113. Individual Defendant did not bother to find out whether his representation to Plaintiff was false or true. Individual Defendant did not have the authority to make such a representation to Plaintiff and had no reasonable ground for believing his representation to be true.

114. Individual Defendant made his representation to Plaintiff with the intent to induce her to rely upon it.

115. Plaintiff believed Individual Defendant's representation and reasonably relied upon it in deciding whether to accept a job position at GFI; Plaintiff would not have accepted the job position at GFI if she had known that Individual Defendant's representation was false.

116. Individual Defendant's representation caused Plaintiff to suffer a loss by preventing her from seeking other employment.

117. As a direct and proximate consequence of Individual Defendant's negligent misrepresentation, Plaintiff has suffered, and continues to suffer, substantial economic damages.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial;

G. For the seventh cause of action, damages to be determined at trial; and

H. For such other and further relief as the Court deems just and proper.


Dated:      New York, New York
            December 12, 2016

By: _____
Walker G. Harman, Jr. [WH-8044]
Edgar M. Rivera [ER-1378]
THE HARMAN FIRM, LLP
220 Fifth Avenue, Suite 900
New York, NY 10001
(212) 425-2600
wharman@theharmanfirm.com
erivera@theharmanfirm.com

*Attorneys for Plaintiff*